UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PALOMAR MEDICAL
TECHNOLOGIES, INC. and THE
GENERAL HOSPITAL CORPORATION,

        Plaintiffs,

    v.

SYNERON, INC.

        Defendant.

**Civil Action No. 1:08-cv-11902-RWZ**

## PALOMAR MEDICAL TECHNOLOGIES, INC.'S AND THE GENERAL HOSPITAL REPLY CLAIM CONSTRUCTION BRIEF

PALOMAR MEDICAL TECHNOLOGIES, INC.
and THE GENERAL HOSPITAL CORPORATION
*By their attorneys*,

Wayne L. Stoner (BBO# 548015)
Vinita Ferrera (BBO# 631190)
Kate Saxton (BBO# 655903)
Dimple Chaudhary (BBO # 674854)
Sarah Beigbeder Petty (BBO # 666485)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

Table of Contents

Page

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT ................................................................................................1

      A.    Syneron attempts to limit the claims by improperly relying on a foreign patent
            proceeding.........................................................................................1

      B.    Syneron improperly attempts to limit the claims by suggesting that the patents-in-
            suit were anticipated by Dr. Eckhouse's work........................................3

      C.    Syneron improperly seeks to limit the asserted claims to a single embodiment, as
            a matter of law. ...................................................................................4

      D.    Syneron impermissibly attempts to limit the claims based on a misreading of the
            prosecution history...............................................................................5

      E.    Syneron disregards the "comprising" nature of the claims.....................8

      F.    Syneron disregards the plain meaning of the claim language and specification. ....8

            1.    '844 patent ...........................................................................8

                  a.    "a wavelength" ('844 patent, claims 27, 41, 46-49) .......................8

                  b.    "a selected wavelength" ('844 patent, claims 1-3, 6-8,
                        17-19, 32, 38, 42, 45-49)"...........................................10

                  c.    "Removal of a plurality of hairs from a skin region,
                        each hair being in a follicle extending into the skin from
                        a skin surface" ('844 patent, claims 1-3, 6-8, 17-19, 27,
                        32, 38, 41-42, 45-49)...................................................11

            2.    '568 patent ...........................................................................12

                  a.    "means for generating optical radiation" ('568 patent,
                        claims 14, 18-20) ........................................................12

                  b.    "optical radiation" ('568 patent, claims 1-10, 13, 14, 18-20,
                        23-24); "the wavelength" ('568 patent, claims 8-10) ...................14

                  c.    "removing multiple hairs, each of which is in a corresponding
                        follicle, from a skin region" ('568 patent, claims 1-10,
                        13, 14, 18-20, 23-24)...................................................15

III.  CONCLUSION................................................................................................15

Table of Authorities

Federal Cases

*Aristocrat Technologies Australia Pty Ltd. v. International Game Technology,*
    521 F.3d 1328 (Fed. Cir. 2008)................................................... 14

*Biomedino, LLC v, Waters Technologies Corp.,*
    490 F.3d 946 (Fed. Cir. 2007)................................................... 14

*Blackboard, Inc. v. Desire2Learn, Inc.,*
    574 F.3d 1371 (Fed. Cir. 2009)................................................... 14

*Commonwealth Scientific and Indus. Research Org. v. Buffalo*
    *Tech. (USA), Inc. and Buffalo Inc.,*
    542 F.3d 1363 (Fed. Cir. 2008)................................................... 4

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.,*
    508 F.3d 1366 (Fed. Cir. 2007)................................................... 12, 13

*Gillette Co. v. Energizer Holdings, Inc.,*
    405 F.3d 1367 (Fed. Cir. 2005)................................................... 8

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
    355 F.3d 1327 (Fed. Cir. 2004)................................................... 12

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,*
    21 F.3d 1068 (Fed. Cir. 1994)................................................... 2

*Heineken Tech. Servs. v. Darby,*
    103 F. Supp. 2d 476 (D. Mass. 2000) ................................................... 2

*Invitrogen Corp.. v. Biocrest Mfg. LP,*
    327 F.3d 1364 (Fed. Cir. 2003)................................................... 5

*Laryngeal Mask Co.  Ltd. and LMA North America, Inc., v. Ambu A/S,*
    *Ambu Inc. and Ambu Ltd.,*
    No. 07-CV-1988 (Fed Cir. September 21, 2010)................................................... 5, 9

*Lemelson v. Gen. Mills, Inc.,*
    968 F.2d 1202 (Fed. Cir. 1992)................................................... 9

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004)................................................... 5

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995)................................................... 9

*Medtronic, Inc. v. Daig Corp.*,
   789 F.2d 903 (Fed. Cir. 1986)..................................................................... 1

*Molins PLC v. Textron, Inc.*,
   48 F.3d 1172 (Fed. Cir. 1995)..................................................................... 2

*National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*,
   357 F.3d 1319 (Fed Cir. 2004)..................................................................... 9

*Netcraft Corp. v. eBay, Inc.*,
   549 F.3d 1393 (Fed. Cir. 2008)................................................................... 13

*Oki Am. v. Advanced Micro Devices, Inc.*,
   No. C04-03171, 2006 WL 3290577 (N.D. Cal. Nov. 13, 2006)................................. 1

*Palomar Medical Technologies, Inc., at al. v. Cutera, Inc.*,
   Civil Action No. 02-10258-RWZ, Dkt. No. 173 .............................................. 12

*Pfizer, Inc. v. Ranbaxy Laboratories Ltd.*,
   457 F.3d 1284 (Fed. Cir. 2006)..................................................................... 2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................... 4

*Quad/Tech, Inc. v Q.I. Press Controls B.V.*,
   701 F. Supp. 2d 644 (E.D. Pa. 2010).............................................................. 2

*Rambus Inc. v. Infineon Tech. AG*,
   318 F.3d 1081 (Fed. Cir. 2003)..................................................................... 7

*Scanner Technologies v. ICOS Vision Sys. Corp, N.V.*,
   365 F.3d 1299 (Fed Cir. 2004)..................................................................... 7

*Skil Corp. v. Lucerne Prods., Inc.*,
   684 F.2d 346 (6th Cir. 1982) ..................................................................... 2

*Storage Tech. Corp.. v. Cisco Sys., Inc.*,
   329 F.3d 823 (Fed. Cir. 2003).................................................................. 5, 7

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
   279 F.3d 1357 (Fed. Cir. 2002)..................................................................... 9

*TDM America, LLC v. United States*,
   85 Fed. Cl. 774 (Ct. Fed. Cl. 2009) ............................................................ 13

*TiVo, Inc. v. EchoStar Communications Corp.*,
   516 F.3d 1290 (Fed. Cir. 2008)................................................................... 13

US1DOCS 7686023v2

*Ventana Med. Sys. v. Biogenex Labs., Inc.*,
  473 F.3d 1173 (Fed. Cir. 2006) ................................................................................ 4

<u>Federal Statutes</u>

35 U.S.C. § 103 ............................................................................................................ 2

35 U.S.C. § 112 .......................................................................................................... 12

<u>Other Authorities</u>

Changes to Implement the Patent Business Goals,
  65 Fed. Reg. 54,604, 54,633 (Sept. 8, 2000) ......................................................... 7

Memorandum of Decision and Order (Dec. 12, 2005),
*Palomar Medical Technologies, Inc., at al. v. Cutera, Inc*., No. 02-10258-RWZ.................12

U.S. Patent No. 5,595,568…………………………………………………….………*passim*

U.S. Patent No. 5,735,844……………………………………………………………..*passim*

## I.      INTRODUCTION

In an effort to limit the claims of the patents-in-suit only to laser light sources, Defendant Syneron Incorporated's ("Syneron") opening brief violates several basic tenants of claim construction. Nothing in the asserted claims, the specification, or the prosecution history of the '568 patent or the '844 patent supports Syneron's proposed construction. In advancing its argument, Syneron disregards the plain meaning of the claim language and asks this Court to import limitations into the claims based on the extrinsic evidence of a foreign patent proceeding as well as Syneron's President's own patents. Syneron's arguments are legally improper, as the Federal Circuit has held on numerous occasions. For these reasons, and as set forth more fully in Plaintiffs' Opening Brief (Dkt. No. 133) and below, the Court should reject Syneron's constructions.

## II.     ARGUMENT

### A.      <u>Syneron attempts to limit the claims by improperly relying on a foreign patent proceeding.</u>

Syneron seeks to limit the claims of the patents-in-suit on the basis of an interpretation made by the European Patent Office ("EPO") (which Plaintiffs can challenge in other proceedings) concerning a foreign counterpart patent. (Syneron Op. Br. at 7-8.) Syneron's argument is incorrect as a matter of law.[1]

As the Federal Circuit and numerous other courts have recognized, findings of foreign bodies in foreign patent proceedings are neither "controlling" nor "persuasive" to a U.S. court evaluating patent claims. *Oki Am. v. Advanced Micro Devices*, Inc., No. C04-03171, 2006 WL 3290577, at *8 n. 2 (N.D. Cal. Nov. 13, 2006) (holding that "*the action taken by the European Patent Office rejecting… counterpart application over the same… reference is neither*

---

[1] Plaintiffs have taken the same position in proceedings before the EPO that they advance here, namely that the optical radiation claimed by the patents-in-suit includes laser and non-laser light sources. Plaintiffs have reserved their rights to challenge any contrary statements made by the EPO. The EPO's interpretations, moreover, are non-binding on courts in European countries.

*controlling nor persuasive*") (emphasis added). *See also*, *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907-908 (Fed. Cir. 1986) ("As a final effort to prove obviousness… *[defendant] urges this court to adopt the conclusion of a German tribunal holding [the invention's] German counterpart patent obvious. This argument is specious.* The patent laws of the United States are the laws governing a determination of obvious/nonobviousness of a United States patent in a federal courts.") (emphasis added); *Heineken Tech. Servs. v. Darby*, 103 F. Supp. 2d 476, 479-80 (D. Mass. 2000) ("Where the prior adjudication was by a foreign nation's court applying its patent law to its patents, the barriers to reliance on the foreign judgment for collateral estoppel purposes become almost insurmountable.") (quotation marks and citation omitted); *Skil Corp. v. Lucerne Prods., Inc.*, 684 F.2d 346, 351 n.3 (6th Cir. 1982) ("[p]atent proceedings in other countries are not controlling"); *Quad/Tech, Inc. v Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 655 (E.D. Pa. 2010) ("Foreign patent determinations are not binding in litigation concerning United States patents and patent law.").

The differences between patent law in the United States and foreign regimes are significant and strongly counsel against permitting statements or findings from foreign proceedings to be used in domestic patent litigation. *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994) ("*The weight that the district court appeared to place on the European examiner's rejection was not appropriate. We take notice of the fact that the theories and laws of patentability vary from country to country, as do examination practices*. Caution is required when applying the action of a foreign patent examiner to deciding whether the requirements of 35 U.S.C. § 103 are met under United States law, for international uniformity in theory and practice has not been achieved.") (emphasis added); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995) (noting "the risk in relying on foreign patent prosecution in light of differences in disclosure requirements, claim practice, form of application, and standard of patentability"). This bar against reliance on

- 2 -

foreign patent proceedings also applies to claim construction.  *See Pfizer, Inc. v. Ranbaxy Laboratories Ltd.*, 457 F.3d 1284, 1290 (Fed. Cir. 2006) ("***[T]he statements made during prosecution of foreign counterparts to the [patent-in-suit] are irrelevant to claim construction*** because they were made in response to patentability requirements unique to Danish and European law.") (emphasis added).

**B.      Syneron improperly attempts to limit the claims by suggesting that the patents-in-suit were anticipated by Dr. Eckhouse's work.**

Syneron also insinuates that, if the patents-in-suit intended to claim sources of optical radiation other than lasers, they are somehow anticipated by the work of Dr. Shimon Eckhouse. (Syneron Op. Br. at 8-10.)  This assertion is factually incorrect and legally irrelevant.  Whatever arguments Syneron may have about invalidity are not relevant to claim construction.

Moreover, Syneron's suggestion that the patents-in-suit were anticipated by Dr. Eckhouse's work is both unfounded and uncorroborated.  Candela Corporation, a wholly-owned subsidiary of Syneron now represented by the same lawyers as Syneron, thoroughly investigated this insinuation – including by deposing Dr. Eckhouse – and has not advanced it as an argument of invalidity.  In fact, to the contrary, Candela's own infringement expert agreed under oath that the claims of the '844 patent are not limited to laser light sources:

> Q. In your opinion, are the claims of the '844 patent limited to lasers?
>
> THE WITNESS:  You know, I haven't made that assessment.  But I believe, as I remember, the patent says using light.  So I'm not -- if it's -- has a general statement of light, then it wouldn't be limited to – to lasers.

(Declaration of Dimple Chaudhary in Support of Plaintiffs' Reply Brief ("Chaudhary Decl."), Ex. A [Deposition of Dr. Richard Fitzpatrick] at 61:16-23 (objection omitted).)

Syneron also contradicts itself in advancing this argument.  At one point, in support of its contention that the patents-in-suit could not have intended to include non-laser light sources,

Syneron states that "[a]t the time of the filing of the '844 patent, it was not well known how to perform skin treatments using incoherent light." (Syneron Op. Br. at 17.) In the same breath, Syneron notes that in 1992, three years before the '568 patent was filed, "Dr. Eckhouse filed a patent directed to incoherent light devices for skin treatment, and methods for treating the skin with such devices, that described his solutions to these problems." (*Id.* at 9, 5 n.2.) Dr. Eckhouse's patent did not relate to hair removal; rather, it focused on the use of an "incoherent light source" such as a flashlamp for "treatment of external skin disorders." (Smith. Decl. Ex. C [U.S. Patent No. 5,405,368 ("'368 patent")] at Abstract.) At the time the '568 patent was filed in 1995, therefore, it was publicly established that non-laser light sources could be used for skin treatments. (*See id.* at col. 2: 30-34 ("[A] wide band electromagnetic radiation source…would be desirable for the treatment of external skin and vascular disorders.").) The inventors of the patents-in-suit recognized this in purposefully drafting language that referred to "light sources" rather than only "lasers."

### C. Syneron improperly seeks to limit the asserted claims to a single embodiment, as a matter of law.

Syneron improperly seeks to limit the asserted claims to a single, disclosed embodiment. (Syneron Op. Br. at 1.) As the patents themselves make clear, a laser is but one means for generating the optical radiation described in the asserted claims. (*See* App. Ex. A to Plaintiffs' Opening Br. ['568 patent] at col. 3:28-30 ("light source 12…***may, for example***, include one or more lasers for generating the irradiating field") (emphasis added).)

However, even if a laser ***were*** the only disclosed embodiment, limiting the claims to that embodiment is legally improper. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); *Ventana Med. Sys. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1181 (Fed. Cir. 2006) ("[A]lthough

the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Commonwealth Scientific and Indus. Research Org. v. Buffalo Tech. (USA), Inc. and Buffalo Inc.*, 542 F.3d 1363, 1385 (Fed. Cir. 2008) ("Nor does the fact that the patent describes a di-bit interleaver and the interleaving of data in two-bit blocks mean that the claims must be limited to devices that interleave blocks consisting of at least two bits."); *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."); *The Laryngeal Mask Co. Ltd. and LMA North America, Inc., v. Ambu A/S, Ambu Inc. and Ambu Ltd.*, No. 07-CV-1988, slip op. at *9 (Fed Cir. Sept. 21, 2010) ("Although the preferred embodiment includes a backplate that contains a tube joint, we do not generally limit claims to the preferred embodiment.").

    **D.**    **Syneron impermissibly attempts to limit the claims based on a misreading of the prosecution history.**

Syneron further suggests that, during the prosecution of the '844 patent, the applicants represented to the U.S. Patent and Trademark Office ("PTO") that the invention **only** claimed laser light sources.  (Syneron Op. Br. at 6-7.)  This is not correct.

Syneron may not use the prosecution history to limit the claim scope absent a "clear and unambiguous" statement that the applicants intended for the PTO to construe the term "optical radiation" as limited to that optical radiation only generated by lasers.  *See, e.g., Storage Tech. Corp.. v. Cisco Sys., Inc.*, 329 F.3d 823, 833 (Fed. Cir. 2003) ("[C]lear and unambiguous disavowal of claim scope [is] required to depart from the meaning of the term provided by the written description"); *Invitrogen Corp.. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1367 (Fed. Cir. 2003) (to limit claim scope based upon prosecution history, the "applicant… must clearly and

US1DOCS 7686023v2

unambiguously express any such surrender of subject matter"). The ***PTO's*** remarks (not the inventors') concerning a "laser source" as a possible source for the optical radiation claimed are entirely insufficient to support a finding that the applicants intended to limit every reference to "optical radiation"; "light source"; "wavelengths"; and "ranges of wavelengths" in the claim language and specification to lasers, let alone single wavelength lasers.

In fact, both the PTO's statement regarding claim 23 (which is not asserted here and did not include a light source) and the applicants' response (when read in its entirety) are not even focused on the question of whether the optical radiation claimed is limited to that which is produced by lasers. The PTO stated that:

> claim [23] appears to be incomplete in that the preamble calls for '…An applicator suitable for use in practicing the method of claim 1' but there is no laser source being claimed. It is not clear as to what structure is being claimed by 'an inlet' and 'an optical path', in as much as these are intangible objects and fail to present further structure. Also, for clarity, it is suggested that the 'surface' is referred to as a 'contact surface' throughout the claim.

(Chaudhary Decl., Ex. B [Prosecution History of '844 Patent] at PAL028996.) In response, the applicants revised claim 23 but ***did not*** add any language suggesting that the optical radiation claimed was limited to that generated by a single wavelength laser; rather, the applicants merely added the terms "having a convex shape and adapted to be in pressure contact with", as requested by the PTO. (*Id.* at PAL02072.) Similarly, in those same amendments, the applicants maintained other claims' references to "optical radiation" more broadly. (*See id.* at PAL029070 ("Please rewrite claim 1 as follows: …(b) applying ***optical radiation*** of a selected wavelength and of a selected fluence" (emphasis added)); ("Please rewrite claim 10, 11, 13, 15 and 20 as follows: 10. …(b) applying ***optical radiation*** of a selected wavelength and of a selected fluence") (emphasis added).) The PTO's choice to frame an inquiry (irrelevant to the claim construction issue here) using the term "laser source" – and the applicants' use of that term in remarks regarding an unrelated patent question – does not "unambiguously" evidence an intent

- 6 -

to exclude either non-laser light sources or multi-wavelength lasers from the term "optical radiation" in every single claim of the patents-in-suit.[2] "The claim language itself controls the bounds of the claim, not a facially inaccurate remark during prosecution." *Rambus Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1090 (Fed. Cir. 2003); *see also Storage Tech.*, 329 F.3d at 832 ("The applicants' inaccurate statement cannot override the claim language itself.")

Syneron's reliance on the Examiner's Statement of Reasons for Allowance during prosecution is also misplaced. (Syneron Op. Br. at 7.) The Examiner's reference to "laser irradiation" was made in relation to '844 patent claims 23, 28, and 30, which are not even asserted here. (*See* Smith Decl., Ex. E [Notice of Allowance].) And although the applicants disagreed with the Examiner's characterization, at the time these events in the '844 patent prosecution occurred in 1997, they had no duty to file a responsive statement to the Reasons for Allowance. Patent Office Rule 1.104(e), prevailing at the time, stated that "[f]ailure to file such a statement does not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasoning of the examiner." *See* Changes to Implement the Patent Business Goals, 65 Fed. Reg. 54,604, 54,633 (Sept. 8, 2000).[3] As Plaintiffs had no duty to respond, they cannot be bound here by the Examiner's misstatement.

---

[2] The full text of the applicants' response to the PTO makes clear that the applicants did not clearly and unambiguously disclaim non-laser light sources or multi-wavelength lasers from the scope of the claim: "With respect to claim 23, this claim is claiming the applicator, for example applicator 18. The laser source is not part of this applicator, but the output from the laser source is applied to the applicator through the inlet which is specified in claim 23. The inlet is for example the light pipe 16 and possibly lens 42 (Fig. 2Al, mirror 44/1ens 42 (Fig. 2B), or equivalent for transferring light energy from the source into the applicator. The optical path is the space between the inlet and the contact element 46. These structural elements are therefore not interchangeable objects but are in fact separate definable elements." (*Id.* at PAL029076.)

[3] The Patent Office rule was eventually changed in 2000, long after the '844 patent prosecution. *See* Changes to Implement the Patent Business Goals, 65 Fed. Reg. at 54,633.

E.   **Syneron disregards the "comprising" nature of the claims.**

All of the asserted claims are "comprising"-type claims.  For example, claim 1 of the '568 patent recites "[a] method of simultaneously removing multiple hairs…said method *comprising*…."  (App. Ex. A to Plaintiffs' Op. Br. ['568 patent] at 12:32-34.)  Such claims are presumptively open-ended, covering devices or methods that include the recited limitations but also include other things.  *See, e.g., Scanner Tech.  v. ICOS Vision Sys. Corp, N.V.*, 365 F.3d 1299, 1305 (Fed Cir. 2004) ("The use of the transitional phrase 'comprising' itself indicates that the elements or steps following the transition may be supplemented by additional elements or steps and still fall within the scope of the claim."); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-73 (Fed. Cir. 2005).

Syneron's assertions that the wavelengths or optical radiation recited in the claims is limited to a "single" wavelength or "laser," wrong on their face (see below), also violate this law.  Even if the optical radiation, wavelengths, or light sources of the claims were limited to single wavelength lasers (and they are not), the "comprising" language of the claims would allow the claims to include *other*, additional optical radiation, wavelengths, and light sources as well.  *Id.*

Indeed, Syneron appears to agree that this is so, even under its proposed construction.  (*See* Syneron Op. Br. at 14 (claim 41 would cover "single wavelength or wavelengths" under Syneron's construction).[4]

F.   **Syneron disregards the plain meaning of the claim language and specification.**

1.   **'844 patent**

a.   **"a wavelength" ('844 patent, claims 27, 41, 46-49)**

_____

[4] For the same reason, Syneron's references to the radio frequency (RF) feature of its device is irrelevant.  (*Id.* at 1, n. 7.)  If the Syneron devices contain every element of the claim, they infringe, even if they also contain other things.

Syneron's assertions that the patents-in-suit disclose only "a single wavelength" and "make[] no mention of applying optical radiation that includes multiple wavelengths" (Syneron Op. Br. at 3, 16) are contradicted by the language of the patents themselves.

As discussed in Plaintiffs' Opening Brief, the asserted claims and specification *expressly* contemplate optical radiation performed with *ranges* of wavelengths. (Plaintiffs' Op. Br. at 10-12; 14-16; *see also* App. Ex. I to Plaintiffs' Op. Br. [Ex Parte Reexamination Certificate for '844 patent] at col. 1:38-40 ("41. A method … wherein the optical radiation is produced by a light source producing a wavelength *or wavelengths* between 680 and 1200 nanometers." (emphasis added); App. Ex. B to Plaintiffs' Op. Br. ['844 patent] at col. 4:62-63 ("the light source is preferably an *array* of diode lasers coupled directly to the irradiating unit….") (emphasis added); col. 8:47-48 ("Light having *wavelengths* between 680 and 1200 nm") (emphasis added).)

Moreover, it is a well-established matter of claim construction that "a" "ordinarily means 'one or more.'" *See, e.g., Tate Access Floors, Inc. v. Interface Architectural Res., Inc*., 279 F.3d 1357, 1370 (Fed. Cir. 2002). The only support offered by Syneron for its proposed construction is a statement from a foreign patent proceeding (which, as discussed above, is legally irrelevant here) and a single quote from the prosecution history (which, also discussed above, Syneron mischaracterizes).

Syneron also offers an unsupported assertion that the patents-in-suit are invalid for lack of written description support and enablement. (Syneron Op. Br. at 16-17.) This is not relevant to claim construction. "It is elementary in patent law that, in determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit." *Lemelson v. Gen. Mills, Inc*., 968 F.2d 1202, 1206 (Fed. Cir. 1992). *See also National Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1334 (Fed Cir. 2004) ("*After construing the claims*, a court must compare the prior art to claims as one of ordinary skill of art at the time of the invention would have done.") (emphasis added); *Markman v. Westview*

- 9 -

*Instruments, Inc.*, 52 F.3d 967, 996 n.7 (Fed. Cir. 1995) (Mayer, J., concurring), *aff'd*, 517 U.S. 370 (1996) ("A claim must be construed before determining its validity just as it is first construed before deciding infringement.").

Regardless, Syneron's invalidity argument fails on the merits. Issued patents are presumed valid and Syneron must demonstrate by ***clear and convincing evidence*** that the claims at issue are invalid for lack of written description. *The Laryngeal Mask Co. Ltd.*, No. 07-CV-1988, at *12-13 (emphasis added). Syneron falls far short of its burden here.

Syneron offers no support for its invalidity argument other than the mere assertion that "at the time the '568 patent was filed, it was not common to treat the skin using incoherent light; if the applicant intended its invention to encompass the use of incoherent broadband devices or systems including such devices, it would have made this clear." (Syneron Op. Br. at 16.) As discussed above, this assertion is simply not true. Dr. Eckhouse filed a patent application in 1992 discussing treatment of the skin (not hair removal) using incoherent light. (Smith Decl, Ex. C. ['368 patent] at col. 1: 15-17.) His application plainly stated that it was "***known in the prior art*** to use electromagnetic radiation in medical application for therapeutic uses such as treatment of skin disorders." (*Id.* at col. 1: 15-17 (emphasis added).) In fact, Dr. Eckhouse further noted that non-laser light sources encompass a range of wavelengths. (*Id.* at col. 2: 45-51 ("[I]t is desirable to provide a light source having a wide range of wavelengths, which can be selected according to the required skin treatment ….Pulsed non-laser type light sources such as linear flashlamps provide these benefits.").) After reading the patents-in-suit, therefore, a person of skill in the art would have easily understood that the inventors claimed a method or device of removing hair that included the use of optical radiation of multiple wavelengths, and could practice that invention without undue experimentation.

>    **b.    "a selected wavelength" ('844 patent, claims 1-3, 6-8, 17-19, 32, 38, 42, 45-49)**

Syneron's proposed construction of "a selected wavelength" as "a single, chosen wavelength" is again inconsistent with the language of the asserted claims and the specification of the '844 patent (which disclose optical radiation from light sources with multiple, varying wavelengths).  (*See, e.g.,* App. Ex. B to Plaintiffs' Op. Br. ['844 patent] at col: 8:47-48 ("Light having **wavelengths** between 680 and 1200 nm") (emphasis added).)  As discussed in Plaintiffs' Opening Brief, even the laser light sources described in the specification are themselves comprised of multiple wavelengths.  (Plaintiffs' Op. Br. at 10-11; *see also* App. Ex. B to Plaintiffs' Op. Br. ['844 patent] at col. 3: 63-66 ("the light source is preferably an **array** of diode lasers….") (emphasis added); App. Ex. J to Plaintiffs' Op. Br. [David Sands, Diode Lasers (Institute of Physics Publishing 2005)] at 47 ("The output of a diode laser will usually consist of **several discrete wavelengths** (figure 3.12)." (emphasis added); (App. Ex. K to Plaintiffs' Op. Br. [Walter Koechner, Solid-State Laser Engineering] at 211 (discussing Nd:YAG and ruby lasers and noting that "[i]f a laser is operated without any mode-selecting elements in the cavity, then the spectral output will consist of a large number of discrete frequencies determined by the transverse and axial modes....Laser emission occurs at those wavelengths at which the product of the gain of the laser transition and the reflectivity of the mirrors exceed unity.").)  Syneron's assertion that lasers "by definition emit light of single wavelength" is, therefore, factually incorrect.

> c.       **"Removal of a plurality of hairs from a skin region, each hair being in a follicle extending into the skin from a skin surface" ('844 patent, claims 1-3, 6-8, 17-19, 27, 32, 38, 41-42, 45-49)**

This claim language is clear and unambiguous, and does not require further construction. Syneron offers no explanation of why its proposed construction is correct, and instead asserts that "it will provide more support for the propriety of its construction in its Response Brief." (Syneron Op. Br. at 18.)  Regardless of the "support" Syneron provides, its proposed construction is incorrect because, as explained in Plaintiffs' Opening Brief, the claim language

- 11 -

does not require removal of more than one hair "from" hair follicles, but only that the hairs removed are "in" corresponding hair follicles. (Plaintiffs' Op. Br. at 13, 18.) The "hair removal" technology of the patents-in-suit is not a physical extraction of a hair from a follicle, but a disruption of the growth mechanisms of the follicle so that the hair stops growing and is therefore "removed."

This limitation also does not require an absence of skin destruction. As this Court has recognized, the claims of the patents-in-suit are directed from removing hair from skin, not removing hair along with skin. (Memorandum of Decision and Order (Dec. 12, 2005), *Palomar Medical Technologies, Inc., at al. v. Cutera, Inc.*, No. 02-10258-RWZ, Dkt. No. 173 at *2-3.)[5]

    2.    <u>'568 patent</u>

        a.    **"means for generating optical radiation" ('568 patent, claims 14, 18-20)**

Syneron also argues that the "specification of the '568 patent ***unambiguously identifies*** the corresponding structure for Claim 14's 'means for generating optical radiation' as a laser." (Syneron Op. Br. at 19 (emphasis added).) The specification says nothing of the kind. As Plaintiffs explained in their opening brief, Syneron's attempt to limit the corresponding structure for the "means for generating optical radiation" to a laser is contrary to both the explicit disclosure of the '568 patent and to Federal Circuit law. (Plaintiffs' Op. Br. at 7-9.)

Claim elements that recite a means for performing a function but do not recite the structure of the means may be governed by 35 U.S.C. § 112, ¶ 6. The Federal Circuit has held that once a court determines that the claim invokes 35 U.S.C. § 112, ¶ 6, the appropriate framework for construing a claim limitation in means-plus-function format involves two steps: 1) identify the function recited in the claim; and 2) identify the corresponding structure in the

---

[5]    Syneron further asserts that Plaintiffs may contend that the hair removal must be permanent, but Plaintiffs have made no such assertion. (Syneron Op. Br. at 18.) As Syneron is well aware, the patents-in-suit cover both temporary and permanent hair removal. (*See* App. Ex. B to Plaintiffs' Op. Br. ['844 patent] at col. 3: 1-16; 15: 17-30.)

specification that is necessary to perform the recited function.  *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1370 (Fed. Cir. 2007).  In identifying the "corresponding structure" it is error to identify more structure than that which is "necessary" to perform the recited function.  *Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1334-35 (Fed. Cir. 2004) ("these structures are superfluous to our claim construction analysis because they are not required for performing the claimed function.").

The specification of the '568 patent repeatedly discloses that the structure performing the function of generating of optical radiation is a "light source" broadly, not only a laser.  (App. Ex. A to Plaintiffs' Op. Br. ['568 patent] at 3:34-36 ("During the hair removal therapy, the ***light source*** is powered by a voltage and current supply 20 and delivers a beam of light through the optics 14 and fiber optics 16 to the irradiating unit 18.") (emphasis added); col. 3:53-56 ("Other properties of the field, such as the wavelength and pulse duration, may be varied by controls 26 which adjust components … of ***the light source***); col. 3:63-66 ("In alternate embodiments, the ***light source***, coupling optics, and irradiation unit may be encompassed in a single, hand-held device.  In this case, the light source is preferably an array of diode lasers") (emphasis added).)

The '568 specification further confirms that this light source may be, but ***is not necessarily***, a laser.  (*See id*. at col. 2:14-17 ("The method of this invention is carried out using a device which includes means (***e.g.***, a laser) for generating optical radiation") (emphasis added); col. 3:28-30 ("light source 12…***may, for example***, include one or more lasers for generating the irradiating field") (emphasis added).)  *See TDM America, LLC v. United States*, 85 Fed. Cl. 774, 800-01 (Ct. Fed. Cl. 2009) (declining to restrict claim scope where specification used the non-limiting word "may"); *see also TiVo, Inc. v. EchoStar Communications Corp.*, 516 F.3d 1290, 1297 (Fed. Cir. 2008) (declining to restrict claim scope where specification used words "for example"); *Netcraft Corp. v. eBay, Inc*., 549 F.3d 1393, 1400 (Fed. Cir. 2008) ("As the district court determined, … an invention is not limited to its examples") (internal quotations omitted).

- 13 -

Syneron suggests that the '568 patent's structure cannot be a "light source" because a "light source is merely a "general[…] type of structure." (Syneron Op. Br. at 19.) This argument is irrelevant. As even the *Biomedino, LLC v. Waters Technologies Corp*. case cited by Syneron itself (Syneron Op. Br. at 19) says, "the patentee need not disclose details of structures well-known in the art." 490 F.3d 946, 950-52 (Fed. Cir. 2007). Syneron's attempts to argue that the "light source" is somehow an ***insufficient*** structure are arguments related to validity, not claim construction.[6]

> **b.   "optical radiation" ('568 patent, claims 1-10, 13, 14, 18-20, 23-24); "the wavelength" ('568 patent, claims 8-10)**

Syneron argues that the claim term "optical radiation" should be limited to "light radiation of a single wavelength" and that the term "the wavelength" should be limited to "a single wavelength." (Syneron Op. Br. at 21.) As discussed in Plaintiffs' Opening Brief, and above in connection with the "wavelength" claim terms in the '844 patent, nothing in the claim language, the specification, or the prosecution history of the '568 patent supports Syneron's proposed construction. (Plaintiffs' Op. Br. at 5-7; 10-12.)

Neither claim 1 nor claim 14 even mentions the wavelength of the optical radiation, let alone limits the claimed "optical radiation" to a single wavelength. And the specification repeatedly uses the term "optical radiation" without any such limitation. (*See* App. Ex. A to Plaintiffs' Opening Br. ['568 patent] at Abstract ("A method and apparatus for simultaneously removing multiple hair follicles from a skin region of a patient. The method includes the step of

---

[6] The *Blackboard, Inc. v. Desire2Learn, Inc*. case relied upon by Syneron concerned computer technology, which the Federal Circuit held is subject to a ***heightened legal standard*** in identifying a corresponding structure. 574 F.3d 1371 (Fed. Cir. 2009). *See Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to "the corresponding structure, material, or acts" that perform the function, as required by section 112 paragraph 6.").

illuminating the hair follicles with a large-area, ***optical radiation*** field by way of a transparent

contact device proximal to the skin region.") (emphasis added); col. 1:37-41 ("The method

includes the step of illuminating the hair follicles with a large-area, ***optical radiation*** field")

(emphasis added); col. 1:10-12 ("This invention relates to hair removal methods using ***optical***

***radiation***") (emphasis added).)

   Similarly, Syneron's proposed construction of "the wavelength" as "a single wavelength"

is inconsistent with the specification because the light sources disclosed in the '568 patent do not

necessarily emit "a single wavelength."  (*See id*. at col. 7:21-23 ("Light having ***wavelengths***

between 680 and 1200 nm, a range indicated by the arrow 70 in the figure, is effectively

absorbed by melanin....") (emphasis added); col. 7:31-32 ("***wavelengths*** shorter than 800 nm

may be used") (emphasis added).)

   As noted above, the specification refers explicitly to light sources that generate optical

radiation having varying and/or multiple wavelengths, and to treatment wavelengths in the plural

form.  For these reasons, "optical radiation" should be construed as "light radiation" and "the

wavelength" should be construed as "one or more wavelengths."

   **c.**  **"removing multiple hairs, each of which is in a corresponding**
      **follicle, from a skin region" ('568 patent, claims 1-10, 13, 14,**
      **18-20, 23-24)**

   Like the '844 patent, the language as used in the asserted claims of the '568 patent is

clear and unambiguous, and does not, as Syneron proposes, require further construction.

Syneron's arguments therefore fail for the same reasons set forth above in Section F(1)(b).

**III.**  **CONCLUSION**

   For the foregoing reasons, Plaintiffs respectfully request that the Court construe the claim

terms above as Plaintiffs have proposed in the claim construction statement, attached as Exhibit

A to Plaintiffs' Opening Claim Construction Brief.

Respectfully submitted,

PALOMAR MEDICAL TECHNOLOGIES,
INC. and THE GENERAL HOSPITAL
CORPORATION

By their attorneys,

 /s/ Dimple Chaudhary
Wayne L. Stoner (BBO # 548015)
Vinita Ferrera (BBO # 631190)
Kate Saxton (BBO # 655903)
Dimple Chaudhary (BBO # 674854)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000
Dated:  October 15, 2010          (617) 526-5000

- 16 -

<u>CERTIFICATE OF SERVICE</u>

     I, Dimple Chaudhary, counsel for Plaintiffs Palomar Medical Technologies, Inc. and The General Hospital Corporation hereby certify that on October 15, 2010 a true copy of the above document was served upon counsel of record for Syneron, Inc. by ECF.


                             /s/ Dimple Chaudhary
                            Dimple Chaudhary (BBO # 674854)

US1DOCS 7686023v2