UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11902-RWZ

PALOMAR MEDICAL TECHNOLOGIES, INC. and
THE GENERAL HOSPITAL CORPORATION

v.

SYNERON INCORPORATED

ORDER

April 14, 2011

ZOBEL, D.J.

      Plaintiffs Palomar Medical Technologies, Inc., and The General Hospital Corporation (collectively "Palomar") and defendant Syneron Incorporated ("Syneron") ask the court to construe disputed terms in U.S. Patent Nos. 5,595,568 (filed Feb. 1, 1995) (Docket # 33 App. Ex. A) and 5,735,844 (filed Jan. 30, 1996) (Docket # 33 App. Ex. B) with its associated ex parte reexamination certificate, issued Dec. 8, 2009 (Docket # 33 App. Ex. I). "[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). The words of a claim are read in the context of the entire patent, including the specification, which is "the single best guide to the meaning of a disputed term." Id. at 1315.

## I. Claim Constructions

### A. '568 Patent

| Term | Construction |
|---|---|
| means for generating optical radiation (claim 14) | laser |

The parties agree that this is a "means-plus-function" claim limitation and, in relevant part, on the meaning of the functional limitation. "[T]he court must then look to the specification and identify the corresponding structure for that function." Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 950 (Fed. Cir. 2007).

The only structure identified in the specification that generates optical radiation, which is the relevant function, is a laser. The summary section states that the "invention is carried out using a . . . means (e.g., a laser) for generating optical radiation." Col.2 ll.14-16. While "e.g." suggests a laser is but one example, the "means" language simply parrots the claim itself, and no other specific example of a structure is given. The embodiments illustrated, described at length, and utilized in the experiments set forth in the examples section are lasers. See, e.g., col.2 ll.60-61 ("the laser-based hair-removal device"); col.3 ll.65-66; col.7 ll.43-48; col.8 ll.29-35, 57-59; col.9 ll.48-49; col.10 ll.39-41, 57-58.

Palomar argues that the structure is, simply, a "light source," a term that also appears in the specification. However, in all but one instance in which the term appears, it is exclusively associated with some form of laser. See, e.g., col.3 ll.28-29 (describing figure 1 as "a laser-based hair-removal system [that] includes a light

source, which may, for example, include one or more lasers"); col.7 ll.43-47 ("[l]ight sources generating light in the preferred range of 680-1200 nm include diode [], Nd:YAG and Nd:YLF [], Ti:Sapphire and infrared dye [], ruby [], and alexandrite [] lasers."); col.10 ll.57-58. The sole freestanding reference to a "light source" is a sentence stating that "[i]in alternate embodiments, the light source . . . may be encompassed in a single, hand-held device." Col.3 ll.63-65. This reference, though, is immediately followed by a statement that "the light source is preferably an array of diode lasers" and no other structure is identified. Col.3 ll.65-66.

| Term | Construction |
|---|---|
| optical radiation (claims 1-2, 4-5, 8, 14) | light radiation |
| the wavelength (claims 8-10) | a single wavelength |

The parties ask the court to construe two related terms, "optical radiation" and "the wavelength." The parties agree that "optical radiation," which appears in independent claims 1 and 14 as well as several dependant claims, means "light radiation," but Syneron proposes the additional limitation "of a single wavelength." Similarly, Syneron argues that "wavelength," which appears in dependant claims 8-10, should be construed to mean "a single wavelength" while Palomar asserts the term means "one or more wavelengths."

I find that the term "optical radiation" is not limited to a single wavelength. No express wavelength limitation appears in claims 1 or 14, and from the language of claims 8-10, it is clear the author of the patent knew how to expressly state a wavelength limitation where intended. Syneron points to language in the specification,

3

but "it is manifest that a claim must explicitly recite a term in need of definition before a definition may enter the claim from the written description." Renishaw PLC v. Marposs Societa' per Azoni, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

Regardless, because the language in the specification "does not *require* a [single wavelength] limitation, that limitation should not be read from the specification into the claims." Specialty Composites v. Cabot Corp., 845 F.2d 981, 987 (Fed. Cir. 1988) (emphasis in original) (explaining that the specification did not distinguish between two types of plasticizers and the emphasis was on the suitability of any plasticizer that would achieve the specified properties, irrespective of type). "Wavelength" is used in the specification to describe optical radiation, a phrase which is singular in form but plural in meaning. See, e.g., Webster's II New College Dictionary 912 (Houghton Mifflin Co. 2001) (defining "radiation" as "emission and propagation of waves"). Thus, for example, "[t]he wavelength of the optical radiation . . . is preferably between 680 and 1200 nm" could mean either a discreet wavelength within that range or the wavelength of the optical radiation spans that range, in whole or in part. Col.1 l.66 to col.2 l.1. The term "wavelengths" also appears in the specification, with similarly ambiguous meaning. Col.7 ll.22-27 ("Light having wavelengths between 680 and 1200 nm . . . is effectively absorbed . . . and therefore can be used . . . .").

The specification explains the reason for this wavelength limitation. The preferred wavelength "range" for the optical radiation is absorbed by the pigment melanin but not water or hemoglobin and therefore "selectively heat[s] the target

4

regions." Col. 7 ll.16-31. The specification neither identifies a single, ideal wavelength, instead listing only a preferred spectrum, nor explains why a single, discreet wavelength would be superior to optical radiation emitted throughout a range of the preferred spectrum.

As regards the term "wavelength," in contrast, the express language of claim 8 requires a single wavelength. "[T]he wavelength of the optical radiation is one which is selectively absorbed by the follicles." Claims 9 and 10 are dependant upon claim 8, so all three are limited to "one" single wavelength.

| Term | Construction |
|---|---|
| removing multiple hairs . . . (claims 1, 14) | none needed |

Syneron asks the court to construe "removing multiple hairs, each of which is in a corresponding follicle, from a skin region," col.13 ll.4-6, but it is unclear from the briefing how or if the parties dispute the meaning of this claim language. Syneron proposes additional language, "whether the removal is permanent or temporary," because "[t]his term, however interpreted, . . . should have no temporal restriction imported into it." (Syneron's Resp. Claim Construction Br. 8, 14, Docket # 39.) None has been. This term is clear and unambiguous. No construction is needed.

### B. '844 Patent

| Term | Construction |
|---|---|
| a selected wavelength (claims 1, 17, 19, 32) | one or more chosen wavelengths |
| a wavelength (claims 27, 41) | a single wavelength |

| the wavelength (claim 46) | a single wavelength |

The parties again dispute whether several terms, "a selected wavelength," "a wavelength," and "the wavelength" should be construed as limited to a single wavelength or inclusive of one or more wavelengths, though they agree that "selected" should be construed to mean "chosen."

The language of the claims and the specification contemplate, in regards to the term "a selected wavelength," one or more wavelengths. The method of claim 41 utilizes "a wavelength or wavelengths." Claim 41 is dependant on claim 32, which specifies the application of "a selected wavelength." A dependant claim is presumed to be narrower in scope that its associated independent claim. AK Steel Corp. v. Sollac, 344 F.3d 1234, 1242 (Fed. Cir. 2003). In addition, the specification describes an embodiment where the skin region is epilated and a fluid is applied that contains a chromophore that selectively absorbs the "the wavelength or wavelengths used for irradiation." Col.14 ll.17-36. This is the method of claim 10, which includes the term "a selected wavelength. Thus, "a selected wavelength" must take the broader meaning.

The term "a wavelength" appears in claim 41, where it is contrasted with "or wavelengths." Nothing in claim 27, where the term also appears, contradicts this use. The term is therefore construed as limited to a single wavelength.

"The wavelength" is limited to a single wavelength for similar reasons. Claims 41 and 46 set forth two alternative optical radiation limitations to apply to the methods found in claims 47-49. Claim 41 is limited to "a wavelength or wavelengths between 680 and 1200 nanometers," while claim 46 requires that "the wavelength is between

700-1200 nanometers. The only way to give full effect to the difference in language is to find that "the wavelength" is not the same as "a wavelength or wavelengths."

| Term | Construction |
|---|---|
| removal of a plurality of hairs . . . (claims 1, 17, 19, 32) | none needed |

Syneron asks the court to construe the "removal of a plurality of hairs . . .", which appears in claim 1 among others, and is almost identical to the "removing multiple hairs . . ." term in the '568 patent. For the reasons set forth in the discussion of that '568 term, I find no construction is needed.

    April 14, 2011                                             /s/Rya W. Zobel
            DATE                                              RYA W. ZOBEL
                                                          UNITED STATES DISTRICT JUDGE